UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARK A. EASON, JR.,

Plaintiff,

v.                                                   CAUSE NO. 3:24-CV-758-GSL-AZ

ENGLISH and ERTEL,

Defendants.

OPINION AND ORDER

Mark A. Eason, Jr., a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Eason alleges that for the past year, starting in July 2023, he has been housed in PHU 3/4 Side at Miami Correctional Facility indefinitely with no available classification process or documents monitoring the intake or release process. According to the classification appeal attached to the complaint, he was placed in PHU after being released from the Restricted Housing Unit. ECF 1-3. Eason alleges that in PHU, he is denied exercise, outside recreation, and barbering service, and is rarely allowed out of

his cell to receive religious services or go to the chow hall for hot meals. He asserts that he and the other inmates on the unit are not allowed out of their cells for almost any reason.

Specifically, Eason details that as of July 10, 2024, he had been out of his cell for a cumulative eight hours over the past 120 days. In that time, he was allowed out his cell only 30 minutes a week, broken up into two fifteen-minute showers. Prior to that, he was allowed out of his cell just three times a week, for one hour at a time. During that hour, he was forced to choose between taking a shower or using the dayroom, which he had to share with twenty-five other prisoners. He alleges that his unit is more restricted than those in solitary confinement because in solitary confinement, inmates receive a minimum of five hours out of their cells a week. He complains that there is no review process to determine whether the placement is still appropriate over time. He sues Warden English and Deputy Warden of Operations Ertel for injunctive relief and damages.

The Eighth Amendment requires that prison officials "must provide humane conditions of confinement . . . and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Conditions of confinement must be severe to support an Eighth Amendment claim. "[T]he prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The Eighth Amendment protects prisoners only from conditions that "exceed[ ] contemporary bounds of decency of a

mature, civilized society." *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994). "[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional." *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997). If the conditions of confinement reach this level, to recover damages, "[t]he plaintiff must prove that the defendant was subjectively aware of and intentionally disregarded an objectively serious risk to his health or safety." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022).

"Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened." *Antonelli v. Sheahan*, 81 F.3d 1422, 1432 (7th Cir. 1996). Thus, "[a] deprivation of exercise that prison officials expect will likely result in severe health problems may violate the Eighth Amendment, unless the deprivation is proportionate to a legitimate penological purpose." *Pyles v. Spiller*, 708 F. App'x 279, 282 (7th Cir. 2017); *see also Martin v. Tyson*, 845 F.2d 1451, 1454, 1456 (7th Cir. 1988) (holding a prisoner suffers "no constitutional deprivation" from four month ban on outdoor recreation when "related to a legitimate prison concern"). The acceptable duration of a lockdown is guided by the "norm of proportionality," whereby the court balances the length of the lockdown with the reason for its imposition. *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013). In *Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001), an inmate's allegation of being held "without any meaningful chance to exercise" for six months stated a claim. Here, giving Eason the benefit of the inferences to which he is entitled at the pleading stage of this proceeding, the allegations in the complaint state a claim against Warden English in his individual capacity for monetary damages and

against Warden English in his official capacity for injunctive relief regarding the denial of opportunity to exercise.

Eason also plausibly alleges that his placement in PHU implicates a Fourteenth Amendment liberty interest. The Constitution doesn't create a due process liberty interest in avoiding transfer within a correctional facility or remaining in the general prison population. *See Wilkinson v. Austin*, 545 U.S. 209, 222 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995). But placement in long-term segregation approaching a year or more can implicate a liberty interest, requiring further inquiry into whether the conditions of confinement impose an atypical, significant hardship. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698-99 (7th Cir. 2009). Although it does not appear that Eason is being held in segregation, the unit-wide restrictions he describes (three months of being allowed out of his cell for only 30 minutes a week and the preceding nine months being allowed out only three hours a week) are sufficiently harsh that if endured for a long period of time could implicate the Fourteenth Amendment. Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *See Isby v. Brown*, 856 F.3d 508, 527 (7th Cir. 2017) (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)). Eason does not identify a particular defendant who is personally involved in denying

him a meaningful review,[1] and therefore he may proceed only against Warden English in his official capacity for injunctive relief to receive a meaning review of his placement in PHU 3/4 side.

For these reasons, the court:

(1) GRANTS Mark A. Eason, Jr., leave to proceed against Warden English in his individual capacity for compensatory and punitive damages for holding him in conditions since July 2023 that do not provide sufficient opportunity to exercise in violation of the Eighth Amendment;

(2) GRANTS Mark A. Eason, Jr., leave to proceed against Warden English in his official capacity for permanent injunctive relief to obtain constitutionally adequate opportunity to exercise as required by the Eighth Amendment;

(3) GRANTS Mark A. Eason, Jr., leave to proceed against Warden English in his official capacity for permanent injunctive relief to receive a meaningful review of his placement in PHU 3/4 side as required by the Fourteenth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Ertel;

---

[1] Deputy Warden of Operations Ertel denied Eason's classification appeal. ECF 1-3. But Eason does not otherwise explain the circumstances surrounding the classification appeal or how the deputy warden was personally involved in the events here. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("For a defendant to be liable under section 1983, she must be personally responsible for the alleged deprivation of the plaintiff's constitutional rights."). Deputy Warden Ertel's involvement in the classification appeals process does not allow a reasonable inference that he has personal involvement in whether inmates in PHU receive a meaningful review of their placement. Without a plausible basis to hold Deputy Warden Ertel responsible for the events here, he will be dismissed.

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden English at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Warden English to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 4, 2024

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT